Filed 8/25/20  P. v. Darley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KELLE SMITH DARLEY,<br><br>    Defendant and Appellant. | C087161<br><br>(Super. Ct. No. 16F2503) |

A jury convicted defendant Kelle Smith Darley of nine counts of lewd or lascivious acts on a child under the age of 14 (Pen. Code, § 288, subd. (a)),[1] one count of providing lewd material to a minor (§ 288.2, subd. (a)), and one count of attempted penetration with a foreign object on a child under the age of 14 by a perpetrator more than 10 years older (§§ 289, subd. (j), 664).  The jury also found three of the counts of

---

[1]    Undesignated statutory references are to the Penal Code.

1

lewd and lascivious acts involved defendant's substantial sexual contact with the victim who was under the age of 14. (§ 1203.066, subd. (a)(8).) The trial court sentenced defendant to serve 22 years in state prison and imposed various fines and fees.

On appeal, defendant contends (1) the trial court committed reversible error by disallowing the defense from impeaching the victim with evidence of her prior sexual history, (2) his trial attorney provided ineffective assistance of counsel by failing to object to the prosecutor "disingenuously arguing" to the jury that there were no "other incidents" of sexual conduct by the victim, (3) he also received ineffective assistance of counsel for lack of objection to the prosecutor's argument that defense counsel "was trying to deceive the jury," (4) the cumulative effect of the errors he alleges requires reversal of his convictions, and (5) the trial court applied the wrong legal standard in considering his motion for a new trial.

We conclude the trial court properly excluded evidence of claimed sexual history of the victim. Defendant's trial attorney did not provide constitutionally ineffective representation by not objecting to the prosecutor's closing arguments. There were no errors to cumulate into prejudice. We are not persuaded the trial court applied the wrong standard in ruling on defendant's motion for a new trial. Finally, we order the abstract of judgment corrected to conform to the sentence actually imposed by the trial court. Accordingly, we affirm the judgment but order the clerk of the superior court to issue a corrected abstract of judgment.

FACTUAL AND PROCEDURAL HISTORY

***Prosecution Evidence***

In the summer of 2009, 12-year-old K. went to stay with her grandmother and defendant at their rural home in Shasta County. At the time, K.'s grandmother and defendant had lived together for 22 years. K. thought defendant was her biological grandfather and saw him as a grandfather figure. K. testified they "had a great relationship." While K. stayed with her grandmother and defendant, the rest of her

2

family went on their annual trip to visit relatives in Hawaii. K. testified she was not allowed to come along on the trip to Hawaii "[b]ecause I was acting up in school and getting in trouble a lot, and so they decided – they didn't really know how to punish me, so they decided taking the trip away from me would be my punishment." K. acknowledged the behavior leading to her punishment: "I was, like, stealing stuff and lying to my teachers and my parents about everything that I was doing." K. had stolen "candy and stuff" from a store and money from a friend. She acknowledged her lying and stealing made things "difficult growing up" because she "would be getting in trouble for lying and not actually what [she] was doing." When she was not allowed to go to Hawaii, K. felt angry and hurt.

During the first week or two, K. had fun learning to drive a lawnmower and participated in farming-related tasks. One evening, her grandmother fell asleep while watching television. Defendant asked K. if she wanted "to see something." K. responded positively, and they went out to the bedroom of the guest quarters in a large barn on the property. Defendant showed K. a pornographic movie on his laptop. K. thought "it was kind of, like, fun." K. looked up to defendant and "didn't think anything was wrong if it was coming from him."

Defendant took off his clothes and asked K. to remove hers. K. took off her clothes and lay on the same bed as defendant. Defendant's penis was erect and he asked if K. wanted to touch it. K. said, "yes" and touched it. Defendant then put a birthday candle into the hole of his penis. Defendant got out a bag of marshmallows and asked if K. wanted to play a game. K. testified she could not remember the details of the game but that it was sexual. K. got approximately five marshmallows. Defendant directed K.'s attention to the pornographic movie, pulled out a vibrator, and asked her to put it on her vagina. While K. put the vibrator on her vagina, defendant put his hands on her body and touched her vagina. He pinched her nipples and "was a little bit . . . rough." Defendant tried to put his fingers into her vagina, but it started to hurt K. K. told him she "didn't

3

like that," and defendant stopped. Before they went back to the main house, defendant admonished K. they "couldn't tell anybody, including [her] grandmother" because "it was [their] secret."

The first molestation occurred two weeks into her stay. Thereafter, the molestations continued every two nights to every other night – always in the guest house. The molestations did not occur when the grandmother stayed awake so that defendant and K. "couldn't sneak off." During one of the molestations, defendant put a candle into his penis, lit it, and asked K. to blow it out. K. touched his penis and blew out the candle. Defendant and K. were naked during that incident.

That summer, K. did not think anything happening between defendant and her was wrong. Every time defendant and K. went to the guest house at night she was molested. Defendant sometimes showed her pornographic videos. After every molestation, defendant told her that it was their secret and that K. couldn't tell anyone, including the grandmother and K.'s parents.

K. had to wake up early on the morning she went home. Defendant tried to wake her up, but she would not wake up. Defendant shook the bunk bed on which she was sleeping on the top tier. K. reflexively kicked him in the face. Defendant "came up and hit [her] in the face." This was a shock to K. because defendant had never been violent with her. K. was surprised and hurt.

Defendant drove K. home. At home, K. did not tell anyone about the molestations. She testified: "[A]t the time I was kind of known as a liar in the family, and I just didn't think anybody would believe me." She also did not want to cause any "family drama." She believed drama would ensue because she had falsely accused her father of beating and molesting her while defendant drove her home. K. explained, "[O]n the drive home with [defendant], I had told him that I had felt that my dad was unnecessarily putting his hands on me because I was angry at them for leaving me behind for the vacation. And I was over-exaggerating – my dad spanked me with a belt, but he

4

never really hurt me, and I told [defendant] that he had. And [defendant] ended up telling the whole family that my dad was abusing me and stuff. . . . And so all that going on, I didn't want to open my mouth about what happened [with defendant] either." On further questioning, K. admitted that during the car ride with defendant, she "stretched the truth a little bit . . . and told [defendant] maybe more than there was to it."

During subsequent years, K. came to realize lying was wrong and therefore regretted her past lies. She testified her past lies bothered her "[b]ecause I'm not a liar anymore, and I used to think it was okay to, like, make stuff up. But, like, I look back and I don't know why I did that."

K.'s mother testified that K. had a rough period in 2009 when her grades suffered and she was bullied at school. During that year, there were "[d]efinitely" times when K. lied to her mother. K. was sent to her grandmother and defendant's house that summer for failing grades and "some behavioral issues at school." K.'s mother took away K.'s cell phone and all electronics before leaving for Hawaii. K. stayed with her grandmother and defendant for three weeks.

After K. returned from staying with her grandmother and defendant, K.'s mother noticed behavioral changes. K.'s mother testified that K. "was more withdrawn from the family. She didn't really want to be hugged much anymore. And she didn't sit and kind of snuggle with us when we were watching TV anymore which was very typical prior to that."

When K. was almost 17 years old, K. and her mother got into an argument. K.'s mother ended up apologizing and saying she was sorry if she had ever punished K. too harshly, such as not allowing K. to go with them to Hawaii. K. became upset and told her mother about being molested by defendant that summer. At some point, K. told her mother "to go ahead and contact the police" about the molestations.

*Defense Evidence*

K.'s grandmother was called as a witness on behalf of the defense. She testified as follows: She and defendant lived together for more than 22 years. They married in August 2017. In the summer of 2009, K.'s mother called her to ask if K. could stay with her and defendant while the rest of the family went to Hawaii. At the time, K. and her grandmother had a good relationship. The grandmother agreed and drove to San Francisco to pick up K. K. had a bad attitude when she first arrived, and it took her a while to become friendly. During her visit, K. had a cell phone that she used constantly for at least several hours every day.

The grandmother suffered from three migraine headaches during the four weeks that K. stayed with them. Although she received injections for her migraines, K.'s grandmother did not take pills for them. The injections did not make her sleepy. For her migraines, the grandmother took only a single nap during the four-week period.

Defendant went to work at 8:00 a.m., and would usually return to the house around 7:00 p.m. K., her grandmother, and defendant would usually eat dinner, then watch television or play a board game. There was never a time when the grandmother fell asleep before K. went to bed.

The property consisted of 20 acres that included a main house and a large barn. K. would go there almost every day to hang out. It had numerous things for kids to do because defendant had raised his children on the property. In the upstairs portion, the barn had a kitchen, bedroom, and bathroom.

During much of the visit, K. was "an angry child." Also during the visit, K. "lied quite often." The grandmother explained, "You know, the things that I would catch her in were just stupid, unnecessary things that didn't mean a lot but, you know, that I never knew when she was being honest and when she wasn't." K.'s grandmother agreed "that kind of dishonesty permeate[d] the whole stay" at her house. K.'s grandmother stated there were no marshmallows in the house during K.'s stay.

6

The grandmother testified that, to her knowledge, K. and defendant were not alone together even once during K.'s stay with them. K.'s grandmother also stated that she is a very light sleeper and would know about every time defendant got out of bed.

On the day before K. went home, the grandmother instructed defendant to wake her up. K. accidentally punched defendant in the face. At no time did K. say defendant had punched her in the face. That day, K. called her father and "got very upset while she was talking on the phone . . . ." She cried the entire night.

On the day K. did go home, the grandmother had a migraine and asked defendant to drive her. About an hour into the drive, K. spoke with her grandmother on the telephone and "she said she was afraid to go home because she was going to get in a lot of trouble and her father was going to be very angry at her. And when he gets angry at her at her, he takes her into the bedroom and spanks her with a belt and does other things to her . . . ." When K.'s mother got back from Hawaii, she called K.'s grandmother and screamed at her. They have not spoken since then.

On cross-examination, K.'s grandmother acknowledged she sent a Christmas card to K.'s family that stated in pertinent part: "Hi, dear ones. I just want to say that I miss you all very much and I love you. [Defendant] wants me to tell you that he is very sorry for any pain or suffering you may have experienced because of him. He never meant to cause anyone any injury or ill will or suffering because of him. Once again, he is very sorry." K.'s grandmother testified this message related to "[t]he incident that had happened and when she was taken home and that [K.'s mother] was angry with us, the incident with her father that [K.] told [defendant] and I about and my daughter . . . , her getting beat and stripped down." The message did not relate to the criminal charges filed against defendant for molesting K.

K.'s grandmother testified that she and defendant lived together for 22 years and were intimate. However, defendant did not enjoy receiving oral sex and therefore it was not in their "repertoire."

7

### *Rebuttal Evidence*

The prosecution called Shasta County Sheriff's Office Detective Kyle Wallace on rebuttal.  Detective Wallace interviewed K.'s grandmother on April 27, 2015.  During that interview, the grandmother said she would occasionally get migraines.  When she had a migraine, "she would go into her room for the day."  While the grandmother slept, K. "would be left alone with [defendant]."  K. also "often" went to the upstairs of the barn "when she wanted to be alone."  During the interview, the grandmother did not report K. ever lied or had her cell phone taken away.  The grandmother also did not mention speaking with K. during the drive while defendant was taking her home.  Instead, she "heard that all from [defendant] at the time once he arrived back home from dropping [K.] off."

## DISCUSSION

## I

### *Limitation on Excluding Victim's Sexual History*

Defendant argues the trial court committed reversible error by excluding impeachment evidence regarding "several sexual acts of" K.  We disagree.

## A.

### *Alleged Sexual Acts of K.*

Prior to trial, defendant's trial attorney filed an affidavit "to admit evidence of sexual conduct of [K.]"[2]  In pertinent part, the affidavit stated that "[d]uring the handling

---

**2**     We refer to the document filed by defendant's trial attorney as an affidavit even though it did not qualify as an affidavit or a declaration.  An affidavit must be sworn before an officer authorized to administer oaths.  (Code Civ. Proc., § 2012.)  Here, defense counsel did not swear an oath before any officer.  The document is also not a declaration because it was not made under penalty of perjury under the laws of the State of California.  (Code Civ. Proc., § 2015.5.)

of this case," defense counsel "bec[a]me aware of the sexual acts of [K.]" that the defense intended to "be used to impeach the credibility of [K.]" These alleged acts were that:

K. had "numerous photos of naked people and videos of people engaging in sexual intercourse" on her cell phone. K. twice took defendant's vibrator without permission. While defendant was taking a bath, K. "suddenly" came into the bathroom, got "into the tub straddling the defendant." Several incidents during which K. "would sit on the lap of the defendant and squirm against his penis and reach under her butt and touch the defendant's groin area and the defendant and/or grandmother would tell her to stop and get off." When defendant played tag with K., "she would tag him in his groin area." Once, when the grandmother and defendant were sunbathing nude, K. joined them in taking off her clothes. She then sprayed defendant with a garden hose. "When the defendant asked [K.] why she was so involved in sexual activity she stated she liked it, that she had engaged in such activity with her step brother and that she was planning to have sex with her boyfriend." When defendant drove her home, K. told defendant that her father beat her and sexually molested her.

In response to the motion to admit the evidence, the trial court conducted a hearing outside the presence of the jury. In response to questioning by defendant's trial attorney, K. testified as follows: At the time she stayed with her grandmother and defendant, she did not own or have a cell phone. K. never saw or used a vibrator inside the main house. She only used a vibrator in the guest house when instructed to do so by defendant. K. never got into a tub with defendant. K. did sit on defendant's lap. She squirmed because defendant "liked to tickle kids a lot." While sitting on his lap, she never tried to touch defendant's penis. At some point, K. played tag with defendant. She could not remember if it was during her 2009 visit. There was never a time when she saw defendant and her grandmother sunbathing. K. never undressed outside. K. admitted it was "very possible" she got into a water fight with hoses with defendant. K. could not

9

remember being asked by defendant about why she was so involved in sexual activity. She never told him she had a boyfriend.

Defendant did drive her home from her 2009 visit. K. told defendant her father spanked her with a belt but did not say her father touched her inappropriately. K. did not remember talking with her grandmother by cell phone during that car ride.

On questioning by the prosecution, K. testified she had never engaged in sexual activity prior to June 2009. She had never used a vibrator, had sexual intercourse, or masturbated.

In support of the motion, defendant's trial attorney argued: "I went through each element in my affidavit, and [K.'s] denying everything, so it clearly sets her up for impeachment." The prosecutor argued against the motion and highlighted K.'s testimony that she did not have a cell phone during 2009 saying: "So just because someone denies something doesn't mean it's actually impeachment if that never actually happened." The prosecutor further argued the only evidence regarding the vibrator was that she used one at the direction of defendant. Whether she used one on her own was not relevant to her credibility. So too, whether she got into the bathtub with defendant was not relevant to her credibility regarding defendant's actions. Squirming on defendant's lap was not a lewd act. K. denied playing tag with defendant in 2009, seeing defendant and her grandmother engage in nude sunbathing, and she was never outside naked with them. There was no evidence K. engaged in sexual conduct with her stepbrother or anyone else prior to 2009. The prosecutor ended by noting consent was not a defense with the minor and that even if any of K.'s conduct had been sexual, it was not admissible under Evidence Code section 782.

The trial court excluded evidence of the alleged sexual conduct. The trial court stated, "I will say that my very strong tentative ruling on the motion is that the Court finds insufficient evidence of any sexual conduct on the part of the victim that is

10

sufficiently probative to be offered for impeachment purposes. [¶] . . . I agree with most everything the People have argued."

## B.

### *Evidence Code Section 782*

As a general rule, a defendant may not question the victim of an alleged sex crime about the victim's prior sexual activity. (*People v. Bautista* (2008) 163 Cal.App.4th 762, 781 (*Bautista*).) Evidence Code section 782 provides a limited exception when a victim's prior sexual activity is relevant to the victim's credibility. (Evid. Code, § 1103, subd. (c)(4); *People v. Chandler* (1997) 56 Cal.App.4th 703, 707 (*Chandler*).) "Evidence Code section 782 applies when the defense seeks to introduce relevant evidence of prior sexual conduct by a child." (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1514 (*Mestas*).)

"Evidence Code section 782 provides for a strict procedure that includes a hearing outside of the presence of the jury prior to the admission of evidence of the complaining witness's sexual conduct. (*Chandler*, [*supra,* 56 Cal.App.4th] at p. 708; *People v. Daggett* (1990) 225 Cal.App.3d 751, 757 (*Daggett*).) Evidence Code section 782 is designed to protect victims of molestation from 'embarrassing personal disclosures' unless the defense is able to show in advance that the victim's sexual conduct is relevant to the victim's credibility. (*People v. Harlan* (1990) 222 Cal.App.3d 439, 447.) If, after review, 'the court finds the evidence relevant and not inadmissible pursuant to Evidence Code section 352, it may make an order stating what evidence may be introduced and the nature of the questions permitted.' (*Daggett*, at p. 757.) 'A trial court's ruling on the admissibility of prior sexual conduct will be overturned on appeal only if appellant can show an abuse of discretion.' (*Chandler*, at p. 711.)" (*Bautista, supra,* 163 Cal.App.4th at p. 782.)

Evidence Code section 782 does not open the door to impeachment of a sex crime victim's credibility by resorting to matters collateral to the charged offenses. "A party

11

may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted." (*People v. Lavergne* (1971) 4 Cal.3d 735, 744 (*Lavergne*).) Evidence Code section 782 does "not . . . allow a fishing expedition based on sketchy and unconfirmed allegations." (*Mestas, supra*, 217 Cal.App.4th at p. 1518.)

## C.

### *Exclusion of Impeachment Evidence*

The trial court properly excluded the impeachment evidence offered by the defense. The possibility K. had a cell phone and the cell phone contained pictures of a sexual nature was not relevant. Because the victim was 12 years old at the time of the offenses, consent was not a defense to the charges against defendant. "For over 100 years, California law has consistently provided that children under age 14 cannot give valid legal consent to sexual acts with adults." (*People v. Soto* (2011) 51 Cal.4th 229, 238 (*Soto*).) None of the testimony introduced at trial by the prosecution would have been contradicted by evidence K. possessed sexually-oriented photos on a cell phone. Thus, the evidence was intended to elicit irrelevant testimony solely for purposes of impeaching it. As the California Supreme Court has held, "it is improper to elicit otherwise irrelevant testimony on cross-examination merely for the purpose of contradicting it . . . ." (*People v. Mayfield* (1997) 14 Cal.4th 668, 748 (*Mayfield*), overruled on another point in *People v. Scott* (2015) 61 Cal.4th 363, 391.)

Similarly, we conclude the trial court properly excluded evidence intended to impeach K. by showing she took a vibrator without permission, got into a tub with defendant, tried to touch defendant's groin while she sat on his lap, and tried to tag him in the groin while playing games. None of this proffered evidence contradicted any of the testimony offered by the prosecution at trial. Further, none of the evidence was admissible to show willingness or consent by K. to engage in sexual conduct due to her young age. Instead, the evidence was intended only to set up K. for impeachment by her denial of these alleged events. The defense, however, was not entitled to introduce

12

irrelevant evidence merely to impeach K. on tangential matters. (*Mayfield*, *supra*, 14 Cal.4th at p. 748; *Lavergne*, *supra*, 4 Cal.3d at p. 744.)

The purported evidence regarding K. taking off her clothes and getting into a water fight with hoses is not evidence of sexual conduct. The offer of proof itself indicates the grandmother and defendant intended only to sunbathe. The evidence does not indicate the 12-year-old victim engaged in this conduct with any kind of sexual aspect to it. This evidence was therefore not admissible under Evidence Code section 782.

Evidence offered to show K. was "involved in" or "liked" sexual activity prior to being molested by defendant was also irrelevant because her consent was not a defense to the charges. (*Soto*, *supra*, 51 Cal.4th at p. 238.) Moreover, a victim's sexual experience with others prior to the incidents giving rise to criminal charges is the epitome of evidence barred from admission by Evidence Code section 782. (*Bautista*, *supra*, 163 Cal.App.4th at pp. 781-782.) Thus, this evidence was properly excluded.

Regarding the evidence K. told defendant her father molested her, that evidence *was* introduced at trial. Moreover, the evidence was used to portray K. as a liar at the time of the molestations. There can be no claim of error regarding the exclusion of this evidence, which was admitted during trial both in the prosecution's case-in-chief and the defense's case.

Having concluded the trial court properly denied defense counsel's motion in limine to introduce impeachment evidence based on alleged sexual conduct of K., we also reject defendant's claim of federal constitutional error. "[W]e find no violation of defendant's right to due process of law or of the confrontation clause. 'Although the complete exclusion of evidence intended to establish an accused's defense may impair his or her right to due process of law, the exclusion of defense evidence on a minor or subsidiary point does not interfere with that constitutional right.' (*People v. Cunningham* (2001) 25 Cal.4th 926, 999.) 'A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a

13

reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted.  [Citations.]'  (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624 (*Quartermain*).)"  (*Bautista*, *supra*, 163 Cal.App.4th at p. 783.)  In sum, the trial court did not commit error by excluding the evidence purporting to show sexual conduct by K.

## II

### *Prosecutorial Misconduct in Advancing an Argument Known to Be False*

Defendant argues the prosecutor engaged in misconduct by "disingenuously arguing that there was no proof brought forward to show that the other incidents involving [K.] occurred, when the prosecutor knew that evidence of the incidents existed but had been excluded . . . ."  Defendant's trial attorney did not object to the claimed misconduct and did not request that the jury be admonished.  Thus, defendant contends the failure to object or request admonishment constituted ineffective assistance of his trial attorney.  We review the claimed error through the lens of defendant's constitutional right to the effective assistance of counsel.  We conclude there was no error.

### A.

### *Review of Claims of Prosecutorial Misconduct During Closing Arguments*

As the California Supreme Court has explained, " 'a prosecutor commits reversible misconduct if he or she makes use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted.' "  (*People v. Fuiava* (2012) 53 Cal.4th 622, 679 (*Fuiava*), quoting *People v. Riggs* (2008) 44 Cal.4th 248, 298.)  Under the federal constitution, prosecutorial misconduct results if "the challenged action ' "so infected the trial with unfairness as to make the resulting conviction a denial of due process." ' "  (*Riggs*, at p. 298, quoting *Darden v. Wainwright* (1986) 477 U.S. 168, 181 [91 L.Ed.2d 144].)  However, " ' "[a] defendant may not complain on appeal of prosecutorial misconduct

14

unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]" ' " (*Riggs,* at p. 298, quoting *People v. Stanley* (2006) 39 Cal.4th 913, 952.)

Here, defendant's trial attorney did not preserve the issues of prosecutorial misconduct for lack of request that the jury be admonished as to any claimed instance of misconduct. Anticipating forfeiture, defendant asserts he received ineffective assistance of counsel for lack of objection or request for admonition by his trial attorney. "A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel. The appellate record, however, rarely shows that the failure to object was the result of counsel's incompetence; generally, such claims are more appropriately litigated on habeas corpus, which allows for an evidentiary hearing where the reasons for defense counsel's actions or omissions can be explored." (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) To establish ineffective assistance of counsel, defendant must show that " '(1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.' " (*People v. Johnson* (2015) 60 Cal.4th 966, 980, quoting *People v. Scott* (1997) 15 Cal.4th 1188, 1211.)

As the California Supreme Court has held, " 'Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' [Citations.] When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was ' " 'no conceivable tactical purpose' " for counsel's act or omission.' " (*People*

15

*v. Centeno* (2014) 60 Cal.4th 659, 674-675.)  With these principles in mind, we turn to defendant's claim of prosecutorial misconduct.

### B.

### *The Prosecutor's Closing Argument*

During closing argument, the prosecutor argued to the jury:  "And ladies and gentlemen, just because an attorney implies something in a question doesn't make it true unless the answer makes it true.  There was a lot of implications happening when defense counsel asked [K.] questions, and she denied them, and there wasn't any other proof then brought forward that those actually occurred."  Defendant's trial attorney neither objected to the argument nor asked that the jury be admonished.

### C.

### *Analysis*

As a general rule, "[t]he prosecution may argue all reasonable inferences from the record, and has a broad range within which to argue the facts and the law.  [Citation.] The prosecutor, however, may not mislead the jury."  (*People v. Daggett* (1990) 225 Cal.App.3d 751, 757-758.)  For this reason, a prosecutor may not ask "jurors to draw an inference that they might not have drawn if they had heard the evidence the judge had excluded."  (*Id.* at p. 758.)  In short, a prosecutor engages in misconduct when "arguing a falsehood."  (*People v. Varona* (1983) 143 Cal.App.3d 566, 570.)

Here, defendant contends the prosecutor committed misconduct by making an argument that "misled the jury into believing facts that the prosecutor *knew* were false." (Italics added.)  The Attorney General counters that "[t]here is absolutely no indication in the record that the prosecutor believed the baseless allegations to be true."  We agree with the Attorney General for two reasons.

First, the acts of sexual conduct by K. alleged in the defense's motion in limine were not alleged in a proper offer of proof.  The affidavit did not identify the source of the allegations.  An unsworn assertion in a document that alleges evidence without a

source does not constitute an adequate offer of proof. (*People v. Schmies* (1996) 44 Cal.App.4th 38, 53; *People v. Foss* (2007) 155 Cal.App.4th 113, 127-128.) Although we resolved defendant's challenge to the exclusion of the evidence alleged in the affidavit on grounds of admissibility, we would have been justified in affirming on the basis that the "affidavit" was defective and therefore failed to properly advance any factual assertion. (*Finnie v. District No. 1 - Pacific Coast Dist. etc. Assn.* (1992) 9 Cal.App.4th 1311, 1316 [noting that, on appeal, we review the result rather than the reasoning employed by the trial court].)

Second, K. testified during the hearing outside the presence of the jury that she was a young child in 2009 and had no prior sexual experience. The prosecutor was not required to accept unsworn assertions of unnamed sources and reject K.'s testimony that she had not engaged in prior sexual conduct as a 12-year-old child. Notably, the trial court concluded there was insufficient evidence of prior sexual conduct of K.

In reply, defendant backtracks to argue that "[i]t didn't matter whether the prosecutor personally believed the proffered testimony from [defendant or his wife]." This is an argument raised for the first time in the reply. Defendant's opening brief consistently asserted deception by the prosecutor in arguing facts known to her to be false. "Arguments raised for the first time in the reply brief are untimely and may be disregarded." (*WorldMark, The Club v. Wyndham Resort Development Corp.* (2010) 187 Cal.App.4th 1017, 1030, fn. 7.) Consequently, the new argument is deemed forfeited.

Because we reject the argument that the prosecutor engaged in misconduct during closing argument, we also conclude defendant's trial attorney was not ineffective for failure to object. "Counsel's failure to make a meritless objection does not constitute deficient performance." (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1080 (*Mitcham*).) Accordingly, we reject defendant's claim of ineffective assistance of counsel regarding the lack of objection to the prosecutor's closing argument.

17

## III

### *Prosecutorial Misconduct in Accusing the Defense of "Twisting the Facts"*

Defendant argues the prosecutor engaged in misconduct by arguing defendant's trial attorney was attempting to deceive the jury. For lack of a timely objection at trial, defendant advances this argument by asserting he received ineffective assistance of counsel. We are not persuaded.

### A.

### *Closing Argument*

During closing argument, the prosecutor argued to the jury that defendant's trial attorney was trying to "twist" the facts of the case. For the first time on appeal, defendant objects to the italicized portions of the prosecutor's argument as follows:

"It is up to you, ladies and gentlemen, to decide what the facts are in this case. Each one of you have listened to this case. I'm sure you listened to the time frames of things that happened in this case, time frames of things that *defense counsel got up here and twisted around.* Now all of the sudden the accidental kicking occurred before a phone call which then occurred before they went to the guest house. That was not [K.'s] testimony.

"*What else did he try to twist around?* That the vibrator came from a bag. [K.] never said that. [K.] was very clear that that vibrator came from a box that the defendant got. Again, *something that was twisted around.*

"How about the idea that the bathroom was on the first floor? Because yesterday when defense counsel was arguing, all of the sudden the bathroom was on the first floor of the barn rather than outside the guest house loft area in the hallway.

"His own witness testified that the bathroom was in that hallway, not on the first floor. *How many things can we twist to make it seem like there's reasonable doubt? Let's just twist and twist and twist until everyone's confused.*

"[K.] told you it was the night before she kicked the defendant accidentally in the face was the last time she went out to the guest house with the defendant and something sexual happened to her. That's what she told you.

"And you know what – defense counsel and [grandmother] want to do is create situations in which [K.] was somehow mad at her grandma and step-grandpa, the defendant, while she was there. Because she was mad at them while she was there, then obviously she's lying about this.

"That's what's happening. [K.] made it very clear to you – by the way, she never said she was held in the house. *That was another let's twist the facts around.* That's not what this is about. Trials are about juries listening to the evidence, deciding what the truth is and making a decision, not taking facts and twisting them how we see fit.

"That's not how this works. That's not appropriate. That's not justice. That's not the truth-finding process of a trial. *Another twist of the facts.* First, it was yesterday that Detective Wallace did a horrible investigation because he never talked to [K]. Yet all of the sudden today Detective Wallace talked to [K.] and told Detective Wallace she got the vibrator in the bathroom. Where did that fact come from? Yesterday, Detective Wallace didn't talk to her; and today, Detective Wallace talked to her." (Italics added.)

The prosecution then asserted K. was interviewed by the police in "a place designed for interviews, a place to take care of victims." Defense counsel objected that there had not been evidence in support of that statement. The trial court responded as follows:

"THE COURT: . . . [¶] Let me respond to that objection. I'm going to overrule the objection, but I'm overruling the objection because I don't recall exactly what the evidence was in this regard. And, I'll just remind the jury that you are the triers of fact. It's up to you to determine what the evidence is in this case. And as I've instructed you, the attorneys' comments in closing argument are not evidence. [¶] Evidence is what we

hear from the witness stand, and it's up to you to determine whether the attorneys are accurate or not with respect to what evidence was produced in this case."

The prosecutor resumed her closing argument. Again, we italicize the portion to which defendant now objects as misconduct. The prosecutor argued:

"You heard what Detective Wallace testified to about a children's advocacy center; that he sent [K.] there; that he then reviewed her recorded interview. Detective Wallace told you that. *So again, another twist of the facts.*" (Italics added.)

"[K.] also never said her grandmother had migraines every day. That's not what she said. She never said her grandmother took pills every day either. That's not what she said. *Again, twisting the facts to try to fit your version of the story that your client didn't do anything. Trying to fit them right in to what* [*grandmother*] *testified to.* [K.] described pill bottles being around. Her grandma took them at certain times. I believe [K.] said the amount of times her grandma had a migraine was two or three times while she was there. She didn't say every day. *Again, a twisting of the facts.*" (Italics added.)

Later during the argument, the prosecutor told the jury:

"It would be inappropriate to put people on the witness stand you had never talked to, especially when you are putting them on the witness stand to talk about things of an intimate nature. But again, we want to make this about everybody other than the defendant. We're going to go after the prosecutor. We're going to go after the detective. We're going to go after the victim because victims always get smeared.

"We're going to go after the victim's mother. We're going to mock the idea that a mom would have a conversation with her daughter about having difficulty raising her daughter and decisions she has made. We're going to mock that and say that's made up based on nothing. No evidence that that was made up in any way, shape or form. None.

"*Twisting the facts, twisting the case to make it fit yours*, to make it fit what you want it to fit, to try to poke holes, to try to find reasonable doubt. That's what this entire argument was about." (Italics added.)

20

The prosecutor summed up her argument as follows:

"It comes down to you using your common sense, you looking at the evidence and saying: What is reasonable? What is not reasonable? What is credible? What is not credible? That's your job. It's not to twist the facts. It's not to advocate for one side or the other. It's to look at the information from a reasonable, neutral-party perspective. That's why we have jurors."[3]

## B.

### *Fair Comment on the Evidence*

During closing argument to the jury, the prosecution has the prerogative to make fair comments on the evidence introduced during trial. "It is misconduct for the prosecutor in argument to impugn the integrity of defense counsel or to suggest defense counsel has fabricated a defense. (*People v. Bemore* (2000) 22 Cal.4th 809, 846; *People v. Hawthorne* (1992) 4 Cal.4th 43, 59.) Counsel may not state or assume facts in argument that are not in evidence. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 102.) That said, we accord counsel great latitude at argument to urge whatever conclusions counsel believes can properly be drawn from the evidence." (*People v. Cash* (2002) 28 Cal.4th 703, 732.) Consistent with this rule, " ' " 'argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.' " ' " (*People v. Stanley* (2006) 39 Cal.4th 913, 951, quoting *People v. Williams* (1997) 16 Cal.4th 153, 221.)

In reviewing defendant's argument, we benefit from the California Supreme Court's guidance in *People v. Stitely* (2005) 35 Cal.4th 514 (*Stitely*). *Stitely* involved an argument that the prosecutor had denigrated defense counsel during closing arguments.

---

[3]    Defendant does not italicize any part of this last statement in quoting it in the opening brief. Nonetheless, we construe defendant's argument to extend to the reference to avoiding the twisting of facts in the jury's discharge of its duties.

(*Id.* at p. 559.)  In *Stitely*, the prosecutor warned the jury "to avoid 'fall[ing]' for counsel's argument . . . , to view counsel's argument as a 'ridiculous' attempt to allow defendant to 'walk' free, to view counsel's statement as an 'outrageous' attempt to demean the victim and treat her as a 'Jane Doe', and to view counsel's argument as a 'legal smoke screen.' " (*Ibid.*, fn. omitted.)  The Supreme Court held these statements did not constitute misconduct because they did "not involve such forbidden prosecutorial tactics as falsely accusing counsel of fabricating a defense or otherwise deceiving the jury." (*Id.* at p. 560.)  Instead, "[t]he prosecutor simply used colorful language to permissibly criticize counsel's tactical approach." (*Ibid.*)  Because the prosecutor's comments were directed at defense counsel's argument and not defense counsel personally, there was no misconduct.  (*Ibid.*)

## C.

### *Comments on the Evidence*

We conclude the prosecutor did not engage in misconduct during closing argument in suggesting to the jury that the defense strategy was to "twist" the facts to exonerate defendant.  Our review of the portion of the closing argument to which defendant now assigns misconduct reveals the prosecutor hewed closely to the facts introduced during trial.  The prosecutor began by reminding jurors *they* were the ones responsible for finding the facts of the case.  The prosecutor then argued the specific details of the testimony including: the sequence of events to which K. testified, that K. never said the vibrator came from a bag, that the grandmother's testimony regarding the location of the bathroom did not agree with defense counsel's argument, the location of the molestations, where K. was interviewed, and K.'s testimony regarding the timing of her grandmother's naps after she took pills.

In short, the prosecutor's argument represented a comparison of facts introduced at trial with arguments made by defense counsel.  This comparison did not constitute misconduct.  (*Stitely*, *supra*, 35 Cal.4th at pp. 559-560.)  As a corollary, defendant's trial

22

attorney was not ineffective for failure to object to the closing argument because there was no misconduct to which to object. (*Mitcham*, *supra*, 1 Cal.4th at p. 1080.)

## IV

### *Cumulative Error*

Defendant contends the multiple errors he claims occurred during trial cumulated in reversible prejudice. We reject the contention because defendant has not demonstrated any error. Without any showing of error, there is no prejudice to cumulate. (*People v. Jablonski* (2006) 37 Cal.4th 774, 832.)

## V

### *Motion for New Trial*

Defendant argues the trial court denied his motion for a new trial under the wrong standard. We are not persuaded.

### A.

### *Motions for Judgment of Acquittal and for a New Trial*

After the prosecution rested its case, defense counsel moved for a judgment of acquittal on grounds the prosecution had not met its burden to prove every element of the charged offenses. Defense counsel argued K.'s testimony revealed gaps in memory and discrepancies that rendered it untrustworthy. The prosecutor countered that K. testified clearly about the length of her stay with her grandmother and defendant and each of the charges could be clearly parsed based on the evidence. The trial court denied the motion, noting that "if there's a conviction, I'm sure we'll return to this discussion – or a version of this discussion – in terms of consecutive, concurrent or 654 issues or things like that."

Immediately prior to sentencing, defendant's trial attorney moved for a new trial based on insufficient evidence. Defense counsel argued the jury did not deliberate properly on every element of every charged offense even though counsel had "no direct evidence to present to the Court." Defense counsel further argued K.'s testimony was not credible because she was "extremely sufficiently impeached on cross-examination . . . ."

23

Having previously considered defense counsel's arguments in ruling on the motion for a judgment of acquittal, the trial court invited counsel to expand on the prior arguments:

"THE COURT: . . . [L]et me get more detail on the nature of the motion. With – your 1118.1 motions [for a judgment of acquittal] were duly noted on the record and discussed and ruled on during the trial. Do you wish to add any further detail as to why you feel the evidence was insufficient to support these findings?"

Defense counsel accepted the invitation and argued that K. was impeached on cross-examination and that her mother characterized her as a liar. Defense counsel reiterated the assertion the jury could not have done its job properly in the short amount of time that it deliberated.

The trial court denied the motion for new trial, and explained:

"You know, the Court is very aware of that danger . . . and that's why, especially in my note-taking during the trial, I'm scrutinizing every count and noting how many counts there are and making sure that there is a sufficient showing to at least make a prima facie case to support each of these counts. [¶] I'm very aware of the danger that the – that a jury can do that, make an assumption that if there's guilt on one count, that there must be guilt on others. [¶] So I – I look very carefully at the facts during the course of the trial anticipating a possible 1118.1 motion on that very issue. And then in this case I made that ruling and obviously found that there was a sufficient showing.

"What – what's quite interesting about this case, which we don't very often see, is a very detailed response from the defendant in the probation report admitting very substantial conduct. And that – and I – as egregious as the conduct was, that fact that there is that open discussion in the probation report, I – I think – and I haven't heard from the People yet, but in my view, eliminates consideration of an aggravated term. There is an acknowledgement of a great deal of conduct that was discussed during the trial.

"You know, granted, I was disturbed by other factors in that discussion. It appeared to me that the defendant was somewhat minimizing some of the conduct but the

24

fact that a lot of the conduct discussed during the trial was admitted and the wrongfulness of the conduct too, certainly motivated me not to aggravate the term.

"But I do not that it – it sort of corroborates or confirms the integrity of the jury's verdict. Now, granted, in reviewing a new trial motion on this basis, I'm not – I just find that intellectually interesting. *I think the law requires that I make an evaluation as to whether there was sufficient evidence to do so on the basis of what was the state of affairs at the end of trial.* But I – I – tentatively speaking, *I do feel like the – each of the counts was well supported* and that the People made clear, especially in their closing argument, what facts they were relying on to support each count." (Italics added.)

The trial court invited comment from the prosecutor, who argued the evidence was sufficient and the jury properly convicted on all counts. The trial court responded in pertinent part:

"Okay. I – well, I agree with your comments. The – and I have just been focusing on the first basis for the new trial motion, the insufficiency of evidence. I should have contributed a few more comments about the second basis, and that is jury misconduct . . . ." On this point, the trial court noted that "there is no evidence before the Court as to any anomaly in the jury room."

## B.

### *Forfeiture*

At the outset, we address the Attorney General's contention the argument has not been preserved for appeal because defendant's trial attorney did not object to the trial court's statements in support of its denial of the motion for a new trial. We reject the contention. Defendant's trial attorney properly tendered the motion for a new trial and articulated the reasons in support of the motion. The argument by defense counsel clearly argued that the trial court should find the evidence insufficient to support the verdict. The argument sufficed to preserve this issue for appeal. (*People v. Carter* (2014) 227 Cal.App.4th 322, 327, fn. 2 (*Carter*).)

## C.

### *Motion for New Trial Based on Insufficient Evidence*

Section 1181, case (6), provides that after "a verdict has been rendered or a finding made against the defendant, the court may, upon his [or her] application, grant a new trial" in circumstances "[w]hen the verdict or finding is contrary to law or evidence . . . ."

As the California Supreme Court has explained, " 'In reviewing a motion for a new trial, the trial court must weigh the evidence independently. [Citation.] It is, however, guided by a presumption in favor of the correctness of the verdict and proceedings supporting it. [Citation.] The trial court "should [not] disregard the verdict . . . but instead . . . should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict." [Citation.] [¶] A trial court has broad discretion in ruling on a motion for a new trial, and there is a strong presumption that it properly exercised that discretion. " 'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.' " [Citation.]' " (*Fuiava, supra,* 53 Cal.4th at pp. 729-730, quoting *People v. Davis* (1995) 10 Cal.4th 463, 523-524.) The trial court abuses its discretion when "it misconceives its duty, applies an incorrect legal standard, or fails to independently consider the weight of the evidence." (*Carter, supra*, 227 Cal.App.4th at p. 328.)

## D.

### *Analysis*

Defendant asserts the trial court "never stated that it was reviewing the motion under the 13th juror standard, and never actually undertook such an independent weighing of the evidence before denying the motion." We disagree.

Section 1181 does not require the trial court to state on the record that it is reviewing a motion for new trial under the 13th juror standard. Where a statute does not

26

require express findings on a particular issue, we do not imply such a requirement. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1273.)  Notably, defendant cites no authority supporting the proposition that a trial court must make particular statements regarding the standard employed while considering a motion for new trial. Thus, we reject the contention the trial court had to state on the record that it was considering the evidence as a 13th juror.

We are not persuaded by the contention the trial court did not independently weigh the evidence in ruling on the motion for new trial.  Instead, the record establishes the trial court paid close attention to the testimony at trial because it knew it had to independently satisfy itself the evidence supported every charge.  The trial court also stated on the record its understanding that "the law requires that I make an evaluation as to whether there was sufficient evidence" based on all the testimony at trial.  As to this evaluation, the trial court stated it found that "each of the counts was *well supported* . . . ."  (Italics added.)  In short, the trial court indicated it viewed the evidence independently of the jury and the evidence in support of each count was sufficient.

Defendant attempts to equate the trial court's reference to the motion for a judgment of acquittal to the incorrect application of that standard to rule on the motion for a new trial.  We reject the argument.  The trial court referred to the prior motion for a judgment of acquittal and invited defense counsel to "add . . . further detail as to why [the defense thought] the evidence was insufficient."  With this invitation, the trial court understood the motion for new trial required the court to consider the evidence as a whole – including the testimony of K.'s grandmother – in assessing whether the evidence was sufficient to convict.  Had the trial court erroneously believed it could have recycled the same standard as for a motion for a judgment of acquittal, it would not have called for additional details regarding the argument of insufficient evidence.

We are also not persuaded by defendant's reliance on the prosecutor's statements to the court in order to establish the court used the wrong standard.  The prosecutor

27

mentioned that the jury found the evidence sufficient to convict. As the Supreme Court has held, a trial court may be guided by a presumption in favor of the correctness of the verdict so long as it independently weighs the evidence. (*Fuiava*, *supra*, 53 Cal.4th at pp. 729-730.) In other words, the trial court is not required to ignore the jury's implied finding that K. was credible.

Although the trial court stated its agreement with the prosecutor's arguments against the new trial motion, the statement was not error. Instead, the agreement appears to address the trial court's recognition it also needed to address defense counsel's assertion of jury misconduct. The trial court's response cannot be read as an abdication of its duty to independently weigh the evidence introduced during trial. Instead, as we explained above, the record shows the trial court independently weighed the evidence introduced during trial.

# VI

## *Correction of the Abstract of Judgment*

Finally, we note the Attorney General asserts the abstract of judgment erroneously indicates a *two*-year concurrent sentence for count 2 (§ 288.2, subd. (a)) when the trial court actually imposed a *three*-year concurrent sentence for count 2. " 'Courts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts.' " (*People v. High* (2004) 119 Cal.App.4th 1192, 1200, quoting *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, we order the abstract of judgment corrected to reflect the sentence imposed by the trial court.

## DISPOSITION

The judgment is affirmed. The clerk of the superior court is directed to prepare a corrected abstract of judgment that reflects defendant was sentenced to serve a three-year

28

concurrent term for count 2 (§ 288.2, subd. (a)), and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


/s/
HOCH, Acting P. J.


We concur:


/s/
KRAUSE, J.


/s/
BUTZ, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

29